THE ATTORNEY GENERAL *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE OAKLAND COUNTY BANK.

The general rule is, that an injunction will be dissolved where the equity of the bill is met, and fully and clearly denied by answer; which must, however, for this purpose, be positive, and full and satisfactory to the Court.

The granting and continuing of injunctions rest in the discretion of the Court, and there are exceptions to the rule above stated.

If, by a dissolution of the injunction, the complainant is likely to be deprived of all benefits he might otherwise derive by succeeding in the suit, it will not be dissolved as a matter of course, on the coming in of the answer denying the equity of the bill.

An injunction will not be dissolved on an answer admitting the equity of the bill, and setting up new matter as a defence.

Where a bill is filed under a statute, where there is an exception in the enacting clause, it must negative the exception; but, where there is no exception to the enacting clause, but an exemption in a proviso thereto, or in a subsequent section of the act, it is matter of defence, and must be shown by the defendant.

The defence in such case should state facts, and not conclusions of law.

Where the answer is put in issue, the defendant must prove what he insists on by way of avoidance.

Corporations have such powers and capacities as are given to them, and none other; and every abuse of such powers is a violation of the law of their being, and a forfeiture of their franchises. The establishment of an agency or office at a place not authorized by the charter, was held to be a violation of it.

Under the act of June 21, 1837, this Court has jurisdiction over banking corporations to restrain them by injunction from exercising their corporate powers, to appoint a receiver to take charge of their assets, and to decree their dissolution, in the following cases: 1st. When the corporation is insolvent. 2d. When it refuses to pay its debts. 3d. When it has violated any provision of its charter, or of any law binding on it.

MOTION to dissolve injunction.

This was a bill filed by the Attorney General, under the act of June 21st, 1837, entitled "An act to provide for

proceedings in chancery against corporations, and for other purposes." It prayed for the appointment of a receiver, under the fifth section of the act, and that the bank might be dissolved, and be for ever deprived of its corporate rights, powers, privileges and franchises; and for such further or other order, as should seem meet, and should be agreeable to equity. Among other things, the bill stated that, by the twenty-third section of the act incorporating the bank, which act was approved March 28th, 1836, it was provided that the legislature might, by a vote of two-thirds of each house, amend, alter, or repeal the same; and that, by an act of the legislature, approved February 16th, 1842, the said act of incorporation was repealed, by a vote of more than two-thirds of both houses of the legislature, and complainant was informed, and believed that the bank had not complied with the saving condition contained in the second section of the repealing act. The bill further stated, that the bank had established an agency at Detroit; and charged that the establishment of such agency was a violation of its charter.

An injunction was granted against the bank, which put in its answer, verified by the oath of its president and cashier, and moved a dissolution of the injunction. The answer admitted the act of incorporation, and the act of February 16th, 1842. It then stated that the bank had complied with the condition contained in the second section of the repealing act. It also admitted the bank had an agency at Detroit, where its cashier resided, and where a large part of its funds was kept; but stated that the agency was confined solely to the redemption of the issues of the bank, and to the buying and selling of exchange, as incident to, and connected with the redemption of its issues; and that no discounts had been made at the agency.

It is unnecessary to make any further statement of the facts contained in the bill and answer, as they appear, so far as they have any bearing upon the decision of the Court, in the opinion of the Chancellor.

*T. Romeyn, E. Farnsworth, and E. B. Harrington,* in support of the motion.

*Z. Platt, Attorney General,* contra.

THE CHANCELLOR. It appears very clearly to my mind that the present motion ought to be denied. But, as the counsel for the bank pressed their motion with much zeal, and seemed to think the question too clear to admit of a doubt, I shall state my reasons for refusing to dissolve the injunction, more fully than I otherwise should.

*First.* When an injunction will be dissolved on bill and answer.

The general rule is, to dissolve an injunction when the equity of the bill is met, and 'fully and clearly denied by the answer. The answer, however, must be positive, and not upon information and belief, and must be full and satisfactory to the Court; otherwise, the injunction will not be dissolved, but will be retained until the final hearing of the cause. *Roberts* v. *Anderson,* 2 *J. C. R.* 202; *Ward* v. *Van Bokkelen,* 1 *Paige R.* 100. The granting and continuing of injunctions rest in the discretion of the Court, and there are exceptions to the general rule above stated. *Poor* v. *Carleton,* 3 *Sumn. R.* 70. If there would be very great danger of the complainant's losing all the benefits of his suit, by a dissolution of the injunction, should he finally succeed, the Court will not as a matter of course dissolve it, on the coming in of the answer denying the equity of the bill. Nor will an injunction be dissolved on the answer of the defendant, where the answer admits the equity of the bill,

and sets up new matter as a defence. *Minturn* v. *Seymour*, 4 *J. C. R.* 497.

*Second.* Is the equity of that part of the bill which relates to the repeal of the charter, met and denied by the answer? The defendants admit the repeal of their charter, but say they have complied with the second section of the repealing act. This, they contend, is a full and complete denial of the equity of this part of the bill. The argument is this: That, inasmuch as the bill does not state by the omission of what particular acts, the defendants have not complied with the second section of the repealing act, but states generally that they have not complied with it, their answer need not go any further than the bill, and that, therefore, it was not necessary for them to state how, or in what way they had complied; that it was sufficient for them to affirm a compliance generally, and, having done so, the injunction ought to be dissolved. The error or fallacy of this mode of reasoning lies in mistaking the equity of this part of the bill, or in supposing it to consist in the omission of the bank to comply with the second section of the repealing act, instead of the repeal of its charter.

By the first section of the act of 1842, the charters of some dozen banks are unconditionally repealed, and, among the number, is the Oakland County Bank. Then follows the second section, which is in these words: "The said Banks of Macomb, Pontiac, Oakland County, Calhoun, and Constantine, if they shall hereafter comply with the requirements of the act, entitled 'an act to repeal the suspension act passed April 12, 1841, and for other purposes,' and shall continue to do a legitimate banking business, shall be exempt from the provisions of this act." Now, at law, in declaring on a statute, where there is an exception in the enacting clause, the pleader must nega-

tive the exception; but, where there is no exception in the enacting clause, but an exemption in a proviso to the enacting clause, or in a subsequent section of the act, it is matter of defence, and must be shown by the defendant. *Teel* v. *Fonda*, 4 *J. R.* 304; 3 *J. R.* 438; 1 *J. R.* 513. Such, I take it, is the rule of pleading in this Court, when a bill is filed under a statute.

It was not necessary, then, for the Attorney General to state in the bill, as he has done, that the bank had not complied with the second section of the repealing act. It was sufficient for him to state the repeal of the charter, and leave it for the defendants to show a compliance with the second section of the act, if they could. It is for them to show a compliance, and not for the Attorney General to show a negative, or non-compliance; and they should have stated in their answer how, and in what way they had complied with the act. They should have stated the facts, that the Court might judge whether they had, or had not complied; and not a conclusion of law, as they have done by their answer, without so much as showing the existence of the facts from which the conclusion is drawn.

Suppose an information filed against the defendants, in the Supreme Court, calling upon them to show by what authority they exercise the privileges and franchises of a bank. To the information the defendants would plead their charter, and the Attorney General would reply the act of last winter repealing it. What would be the next step? The defendants would put in a rejoinder admitting the replication, or the repeal of their charter, and then set forth the second section of the act, and proceed to allege a compliance with it, by a statement of facts showing how, and in what way they had complied. If the Attorney General deemed the rejoinder insufficient in

law, he would demur; or, if he supposed it sufficient in law, but not true in fact, he would put in a sur-rejoinder denying its truth, and the defendants would be compelled to establish its truth by evidence. Must the Attorney General prove more in this Court, to make out his case, than at law ?

In foreclosure bills there is usually an allegation that a certain amount is due, and unpaid, at the time of filing the bill. If the defendant, by his answer, after admitting the execution of the mortgage, and the debt for which it was given, should deny there was any thing due on it at the time of filing the bill, would the answer be evidence of that fact for the defendant; and would the complainant be required to prove the money had not been paid ? If such be the rule of pleading in this Court, the pleader should be cautious what he states in his bill, or he will make the defendant a witness for himself, to establish a defence that admitted and avoided the complainant's cause of action. The rule is, that, where the answer is put in issue, the defendant must prove what he insists on by way of avoidance. *Hart* v. *Ten Eyck*, 2 *J. C. R.* 89.

*Third.* The agency in Detroit is a clear violation of the charter of the bank. By the charter, the bank was to be located at such place in the county of Oakland as a majority of the stockholders should direct, and it was located, in October, 1836, at the village of Pontiac. The cashier resides at Detroit, and has charge of the agency, and a large part of the funds of the bank is kept at the agency. By their answer, the defendants say the agency is confined solely to the redemption of the issues of the bank, and to the buying and selling of exchange as incident to, and connected with the redemption of their issues; and they deny that any discounts have been made at the agency. A brief statement of facts, taken from the an-

swer, will show the extent and kind of business done at both the bank and agency.

While the bank is charged with $1,831 of the bills in circulation, the agency is charged with $6,633. While the deposites at the bank amount to $30 only, at the agency they amount to $6,337.19. While the bank had specie and other assets, at Pontiac, to the amount of $3,011.55, it had at its agency in Detroit, in specie, drafts, and funds deposited in Eastern cities, $28,662.57. These facts, of themselves, show that nearly the whole business of the institution was done at its agency in Detroit, and not at Pontiac where the bank is located. It is immaterial, so far as it regards the violation of its charter, whether discounts were made at the agency, or not.

Deposites were received, drafts bought and sold, and the bills of the bank put in circulation, at the agency; all which the corporation, by its charter, had no right to do in Detroit, or at any other place except Pontiac, where the bank is located. In the case of *The People* v. *The Trustees of Geneva College*, 5 *Wend. R.* 211, which was an incorporated college in the village of Geneva, in the western part of the state of New York, it was held that the trustees had no power to establish a medical school in the city of New York, or at any other place than Geneva, where the college was located. The Chief Justice, in delivering the opinion of the Court in that case, says, "In answering this question, we have only to return to the fundamental principle relating to artificial beings, that they have such powers and capacities as are given to them, and none other. This corporation, by the very terms of its charter, is restricted as to place, as much so as is the Bank of Geneva. Suppose the Bank of Geneva were to establish an office of discount and deposite in the city of New York, could they justify such a proceeding? It may

be answered the charter of this bank contains an express prohibition against carrying on business elsewhere; but without such prohibition, there could be no question on the subject, and it would be no answer to say that the bills are signed in Geneva." An authority to do a thing at one place is no authority for doing it at another and different place. It would be idle for the legislature to locate a bank, if the institution could perambulate the state, and establish agencies whenever and wherever it might think it for its interest.

A corporation is an artificial being, created by law with limited powers, and for specified purposes; and there is a tacit condition annexed to its charter, that it shall exercise its franchises in the manner and for the purposes specified therein, and for no other purpose, and in no other manner; and every abuse of its powers is a violation of the law of its being, and a forfeiture of its franchises. *Commonwealth* v. *The Union and Marine Insurance Company*, 5 *Mass. R.* 232; 9 *Mass. R.* 427; *Story J.* 9 *Cranch R.* 51; 2 *Kent Com.* 312; *Ang. & Ames on Corp.* 510, *and cases there cited.*

*Fourth.* It was insisted that the act of 1837 was not imperative, but left it discretionary with this Court, to grant the injunction or not; and that, as the Attorney General had instituted proceedings against the bank in the Supreme Court, and it did not appear that the public would sustain any injury if the institution should be permitted to proceed with its business, until the question could be settled in that Court, the injunction should for that reason, if no other, be dissolved.

The bill is not filed under the first two sections of the act of 1837, but under the third, and subsequent sections. Under the first and second sections, this Court is authorized to restrain, by injunction, the exercise of a franchise,

after proceedings have been instituted at law to test the right to the franchise, 1st, In the case of a corporation assuming any franchise, liberty or privilege, or transacting any business not allowed by its charter; and, 2nd, Where individuals claim any corporate rights, privileges, or franchises, not granted to them by law. In these two cases, the jurisdiction of the Court extends no further than to restrain the corporation or individuals, as the case may be, from exercising the franchise claimed by them, until the question of right is settled at law. An injunction, therefore, would not be granted unless the usurpation was clear, or, it being doubtful, unless there was danger to the public while the question was being tried at law. But, under the other sections of the act, the powers of this Court are more extensive against *corporations having banking powers.* It has power not only to restrain such corporations, by injunction, from exercising their corporate powers, but to appoint a receiver to take charge of their property and effects, and to decree their dissolution, in the following cases: 1st. When the corporation is insolvent; 2d. When it refuses to pay its debts; and, 3d. When it has violated any of the provisions of its charter, or act of incorporation, or any law binding upon it. Under the statute this Court has greater power over banking corporations than the Supreme Court. It may not only enforce a forfeiture of their franchises, by dissolving them, for a violation of their charters, but it may appoint a receiver to take charge of their effects, for creditors, and compel the officers and stockholders to discover the same under oath.

Whether the Attorney General should be allowed to proceed in this Court and at law at the same time, or should be required to make his election in which court he will

proceed, is a question not now before me, and one that it will be time enough to decide, when it is properly brought before the Court.

Motion denied.